[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: JOINDER OF ABSENTEE PARTY
In this case, the City of Hartford requested bids for a five year contract commencing in 1998 to transport its school children. The plaintiff submitted the low bid but the city manager refused to award the contract to the plaintiff indicating the decision was based on alleged NLRB violations. In response the plaintiff filed a "temporary injunction and order to show cause" in the beginning of July, 1998. The plaintiff sought an order from the court in effect restraining the city from awarding the contract to any other company than that of the plaintiff. In the complaint the plaintiff also asked for monetary damages under various theories of recovery.
What is interesting to note is a factor that may have to be taken into account when the substantive issue of injunctive relief is addressed — the hearing which was held was held only upon a temporary injunction. Apparently, there was no request by either of the parties or by the court that the pleadings be closed so that the hearing could be transformed into a hearing for permanent injunctive relief.
In any event, a hearing on the temporary restraining order was held on July 29, 1998. After the hearing, but before the decision was rendered by the judge, Hartford executed a five year contract for the school bus services with Laidlaw Transit, Inc. on August 4, 1998. On August 7, 1998, the judge who heard the matter denied the temporary restraining order. At the time of the hearing, the defendant had argued that Laidlaw was a so-called "necessary party" and should be added to the proceedings. (See P.B. § 9-18.) Not surprisingly the court refused to so I find — Laidlaw did not have any contractual rights at the time of the hearing. In the absence of a finding that a party is a necessary party under our rules it would certainly appear to be the case that a plaintiff should not be forced to structure his case and the parties it wishes to sue at the defendant's demand.
In any event, because the July, 1998 hearing was one for temporary injunctive relief and, therefore, not final, no appeal was or could have been taken from the decision of the court either before Laidlaw began to fulfill its contractual commitments in September, 1998 or at a time CT Page 2877 shortly thereafter. The underlying suit for damages filed by the plaintiff proceeded on its merry way and came up for trial in the middle of September, 2000. This would be right before or soon after the commencement of the school year 2000. At that time, the plaintiff proceeded with its damage claim and also sought permanent injunctive relief which in effect would award the remainder of the previously mentioned five year contract to the plaintiff thus necessarily terminating or rescinding any rights Laidlaw may have to carry out the remainder of the contract.[1]
The court allowed the damage claim to go to the jury and the plaintiff prevailed on its claim under our state's anti-trust laws. The recovery against the defendant city was based on profits claimed to have been lost by the plaintiff as a result of not having received the five year contract. The court is presently reviewing post trial motions to set aside that verdict. The court reserved the question as to whether Laidlaw was a necessary party on the injunction portion of the claim for relief. If it decided Laidlaw was necessary and in fact indispensable the court indicated that the hearing on injunctive relief would begin ab initio, if not the court would proceed to decide the request for injunctive relief based on the trial testimony and any further evidence the parties wished to offer. Although the city at all times in this litigation argued Laidlaw was a necessary party, it is the court's understanding that neither side objected to the just-mentioned procedural arrangement — even if the court were to decide Laidlaw had to be included in any hearing on injunctive relief and the evidentiary process had to begin ab initio this would present no insuperable problem since no more than two or three days of evidence would be necessary on the recommenced injunctive hearing. This solution of course can be favorably compared to the procedural and evidentiary nightmare that would have been presented if the court, at trial, had ruled Laidlaw was required as a party on the injunctive hearing aspect of the trial but not as to that aspect having to do with the plaintiff's damage claim against the city. In that regard, it should be noted that the plaintiff never sought monetary damages under any theory of liability against Laidlaw nor could it be based on its complaint or any evidence heard by the court.
In any event, the city takes the position that Laidlaw is a necessary and if indispensable party and should be brought into the litigation over injunctive relief; the plaintiff disagrees. Practice Book § 9-18
discusses the issues raised by this problem. An excellent discussion appears in Connecticut Practice, Vol. I, Practice Book Annotated, Horton 
Knox where the authors comment on P.B. § 9-18 (see pp. 310-13). The authors note that a leading case in our state is Sturman v. Socha,191 Conn. 1, 6-7 (1983). Practice Book § 9-18 does not use the terms "necessary" or "indispensable" but Sturman, despite heavy criticism by CT Page 2878 Horton and Knox, provides the framework for deciding questions of compulsory joinder in terms of an analysis that defines those terms. In fact, the Sturman court purports to follow the federal case law in this area referencing Moore's Federal Practice and its discussion of Federal Rule of Civil Procedure 19 and the leading federal case Shields Barrows, 58 U.S. 130 (1855) which provides the "classic statement" of the distinction between "necessary" and "indispensable", according to Moore, who also says Shields "continues to be one of the most widely cited cases in the history of the Federal Courts," Moore's Federal Practice, Vol. 4, § 19.02(2)(c), p. 19-12. In Shields v. Barrows, supra, the court defined necessary parties or absentees as persons having an interest in the controversy, and who ought to be made parties, in order that the court may act;" indispensable absentees are "persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."58 U.S. at p. 139. How does a court decide if a party is necessary and/or indispensable?
The substantive and procedural aspects of problems in this area are reflected in quotes from Moore and a Federal Supreme Court case that comment on the policy behind Rule 19. They reflect a concern with fairness and pragmatic considerations which are considered central to the implementation of the federal rule.
The quotes are as follows:
 . . .". indispensable is a subset of necessary.
Necessary refers to those absentees who should be joined in the pending case; if joinder is feasible, however, the present action can continue without necessary parties. Indispensable refers to those absentees who must be joined in the pending case if it is to go on; if joinder is infeasible the present action must be dismissed." (Emphasis added by court.)
Moore, Federal Practice, Vol. 4, p. 19-12.
 "There is a large category . . . of persons who, in the Rule's terminology, should be "joined if feasible," and who, in the older terminology, were called either necessary or indispensable parties. Assuming the existence of a person who should be joined if feasible, the only further question arises when joinder is not possible and the court must decide CT Page 2879 whether to dismiss or to proceed without him. To use the familiar but confusing terminology, the decision to proceed is a decision that the absent person is merely "necessary" while the decision to dismiss is a decision that he is "indispensable". The decision whether to dismiss (i.e., the decision whether the person missing is "indispensable") must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests. Rule 19 does not prevent the assertion of compelling substantive interests; it merely commands the courts to examine each controversy to make certain that the interests really exist. To say that a court "must" dismiss in the absence of an indispensable party and that it "cannot proceed" without him puts the matter the wrong way around: a court does not know whether a particular person is "indispensable" until it has examined the situation to determine whether it can proceed without him."
Provident Bank v. Patterson, 390 U.S. 102, 118-119 (1967).
In federal procedure, the question of indispensability arises if once the necessary party determination is made it becomes apparent for some reason that it is not feasible to join a necessary party. But if an absent party is "indispensable" it is by definition a "necessary" party. Discussion in the federal cases can be confusing because lack of feasibility is often a given due to diversity jurisdiction requirements so the discussion often goes directly to indispensability. But what must not be forgotten is that, as noted, indispensability is a subset of necessary and the indispensability determination is pragmatic. That is, one of the factors to be considered "before dismissing a case for want of a party which should be joined is to what extent the judgment rendered in the person's absence may be prejudicial (to that person). A court must take a practical look at the interests of the absentee which may be affected by a judgment rendered in (the absentee's) absence, and must determine whether, if as a practical matter, (the absentee's) interests may be impaired or impeded, even though (the absentee) is not technically bound by the doctrine of res judicata." Federal Procedure LawyersEdition, Vol. 26, § 59:93, pp. 86-87.
As noted here, if the court were to grant the relief requested by the plaintiff Laidlaw's five year contract with the defendant city would be abrogated — the contract has over two years to run. If for some CT Page 2880 reason it were not feasible to bring Laidlaw into this case it would be difficult to see how it could be said that it was not an indispensable party which again is a subset of the necessary party category. As one case that gets right to the point says "An indispensable party is one whose presence is so essential to the decision of the case that a final decree cannot be entered without materially affecting (that party's) interest."Wilson v. Board of Education, 468 N.E.2d 995, 998 (Ill., 1984). If this court were to, in effect, continue with the hearing on the injunction without having Laidlaw joined, it in effect, would, by court diktat, be declaring that it is not feasible at this stage of the proceedings to join Laidlaw to the case. But then the question of whether Laidlaw is indispensable would have to be squarely faced and if it is indispensable it also is a necessary party. And the court decisions consistency hold that where a party's contract rights are to be rescinded or abrogated that party is indispensable. In Shields v. Barrow itself, the court held that a contract cannot be rescinded by a decree without having before the court all the parties whose rights could be affected by thereby.58 U.S. at p. 411. In Federal Procedure, Lawyers Edition, Vol 26, it states at § 59:107, p. 100: "An action seeking recission of a contract must be dismissed unless all parties to the contract and all others having a substantial interest in it can be joined." See Connecticut LegalServices, Inc. v. Heintz, 689 F. Sup. 82, 84 (D.Conn. 1988);Crouse-Hinds Co. v. Internorth, Inc., 634 F.2d 690 (CA 2, 1980) where the court quoting from another case said "No procedural principles is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." Id., p. 701. Also cf. Naarte v.Consulting Corp. v. Watt, 722 F.2d 779, 788-89 (DC Ct. of App., 1983). Based on this reasoning, Laidlaw would appear to be necessary and indispensable party.
The matter can be looked at from another perspective would Laidlaw have a right to intervene? In Horton v. Meskill, 187 Conn. 187 (1982), the court said there would be such a right "where the applicant's interest is of such a direct and immediate character, that the applicant will either gain or lose by the direct legal operation and effect of the judgment." Id., p. 195. Laidlaw would seem to have an absolute right to intervene under that test given the facts of this case and the nature of the relief being sought by the plaintiff. By the same test Laidlaw would seem to be a necessary party and, therefore, subject this matter to dismissal if for some reason it is not feasible to join Laidlaw in this case. If Laidlaw is not given an opportunity to litigate this injunction, it would seem to violate elemental rules of fairness. The foregoing reasoning seems to support the position that Laidlaw should be joined before any hearing on the injunction proceeds. However, counsel for the plaintiff raises various objections to this result and the court will now discuss them. CT Page 2881
 (I)
The plaintiff argues that this matter has gone on for over two years and Laidlaw has not taken any actions on its own to intervene — in effect this failure to act supports a finding that Laidlaw is certainly not indispensable and not only should not be joined in the litigation but also perhaps not even be given notice, at least by the court, that it is proceeding.
This raises an issue referred to in subsection (a)(2) of Federal Rule 19. There it says "a person . . . shall be joined as a party in the action if . . . (2) a person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest . . ." In other words, it would appear that it is not enough to have an interest but an "outsider must claim the interest" Federal Procedure, supra, § 59:82, p. 78. The commentary goes on to say under Federal Rule § 19 that "Joinder will not be permitted if an interest is expressly disclaimed, a review of the pleadings indicates that a proposed party has no interest in the proceeding or the outsider (here Laidlaw) does not actively assert his interest by seeking to join or intervene." There is no indication here that Laidlaw has expressly disclaimed any interest in the proceedings. cf. Morgan Guaranty Trust Co. of N.Y. v. Martin, 466 F.2d 593, 598 (CA 7, 1972); Continental Insurance Co. of N.Y. v. Cotter, 427 F.2d 48, 51 (CA 9, 1970). An examination of the pleadings does not indicate that the proposed party Laidlaw has no interest in the proceedings — the contrary is indicated, see Humble Oil Refining Co. v. Harang,262 F. Sup. 39, 45 (E.D.La., 1966). As to the last factor to be considered — did the absentee party claim an interest, see StatenIsland Rapid Transit Railway Co. v. S.T.G. Construction Co., 421 F.2d 53,58 (fn 6) (CA 2, 1970); Gateway Associates, Inc. v. Essex-Costello,Inc., 380 F. Sup. 1089, 1095 (ND Ill., 1974). It is interesting to note that in both these last mentioned cases the courts made a point of also noting that the absentee did not appear to have an interest to protect in the litigation apart from the fact they made no such claim. An interesting comment appears in "Joinder — Necessary Party", 22 ALR Fed. 765, 8, at p. 794. The article tries to pay deference to the requirement that the absentee claim an interest but then makes a practical observation which is refreshing in the morass surrounding these questions of what is a "necessary" or "indispensable" or just a "proper" party. The article says that:
 "Clause (2) of Rule 19(a) is, by its terms, limited to a person "who claims an interest' relating to the CT Page 2882 subject of the action. The courts generally construe `claims an interest' as though it read `has an interest,' without discussion of the difference, if any. Since an absentee obviously cannot make `claims' in the action itself, the word no doubt refers to the claims he might make on the basis of the actual interests he has, within the knowledge of the parties before the court, which suggests to them or to the court the possibility of prejudice to him or them. It thus appears that the absentee must be one who `has an interest,' before he can be considered one who `claims an interest,' which would require a determination as to the necessity of his joinder within the Rule."
In this case, a temporary injunction was sought over two years ago before Laidlaw's contract obligations even commenced. The plaintiff failed to secure the relief sought and it would have been apparent to Laidlaw that no appeal could have been taken from a denial of a request for temporary injunctive relief. The damage action against the city then wound its way through the courts and when that matter came to trial the court still believed Laidlaw was not a necessary party to that action so query how could it have intervened? How can the court assume Laidlaw was aware that the plaintiff was pressing for permanent injunctive relief at the same time as the damage action was being tried — a position that for reasons that need not be discussed now can be said to be incompatible. Elemental fairness, if not due process, would seem to require that, given the interest Laidlaw has in the outcome of this injunction action, Laidlaw. should be joined. If upon being made a party Laidlaw formally disclaims an interest or indicates by its inaction it has no interest in participating in the matter, or that it considers the representation of its interest provided by the city as being adequate, then at that point, the court might be persuaded that Laidlaw is not indispensable and the matter can go forward without its presence. We are not at that point yet.
 (II)
The plaintiff also argues that the underlying contract between the city and Laidlaw was illegally awarded. It is void ab initio and courts will not enforce any alleged right directly springing from such a contract.Solomon v. Gilmore, 248 Conn. 769, 785 (1999). Thus Laidlaw has no cognizable interest that it can seek protection for as a necessary and indispensable party. Here, the plaintiff argues it "claimed and the jury affirmed that the defendant city illegally withheld the school bus contract from the plaintiff." But query would the court hearing the injunction be bound by the jury decision as to the illegality of the CT Page 2883 contract. There is a motion to set aside that verdict in any event; if the court were to grant it then this argument would have little immediate bearing. But in any event, why should Laidlaw be bound by that jury determination if it serves as a predicate for negating its contract, especially in a case where the plaintiff stoutly resisted a pretrial motion to bring Laidlaw into the jury case?
Nor can Laidlaw's right to be joined in be deflected by an argument that says that since the interests of the defendant and Laidlaw are severable, laidlaw's interests need not be compromised by any result reached in the suit for injunctive relief.
That is, Laidlaw can bring a suit for damages against the defendant city even though the contract with the city is illegal if Laidlaw can be shown not to have participated in the illegality.
 "If a party enters into an illegal bargain and is justifiably ignorant of the facts creating the illegality and the other is not, the innocent party may recover on the contract if he (she) can show that he (she) would have been ready, willing and able to perform but for the illegality. Law of Contracts,
Calamari Perillo, § 22-2, p. 891.
 "If a promisee is excusably ignorant of facts or of legislation of a minor character, of which the promisor is not excusably ignorant and in the If absence of which the promise would be enforceable, the promisee has a claim for damages for its breach but cannot recover damages for anything that (he) (it) has done after (he) (it) learns of the facts or legislation."
Restatement (Second) Contracts, § 180.
This all may be true, but how can Laidlaw be told that it should be satisfied with pursuing a damage action against the city which could take months or years to come to fruition. Compensation for certain real harm to Laidlaw may be difficult to calculate or translate into a recognized and viable damage remedy such as the loss of good will resulting from termination of a contractual relationship with the state's largest city or the loss of other opportunities Laidlaw did not take advantage of because of its commitment to the Hartford contract.
If we turn to Federal Rule 19 for guidance, it should be noted, in this regard, that joinder under that rule "does not require an absolute CT Page 2884 showing that the absentee's interest will necessarily be harmed by nonjoinder; rather, it is concerned that nonjoinder (may) result in such harm . . ." Emphasis by Moore, supra, at § 19.03(3)(e), pp. 19-50.
But even apart from the foregoing, it must not be forgotten that this is an action for injunctive relief and "a prayer for injunctive relief is addressed to the sound discretion of the court," Advest, Inc. v.Wachtel, 235 Conn. 559, 562-563 (1995). The issuance of an injunction and the scope and quantum of injunctive relief rests in the court's discretion. Dornfried v. October Twenty Four, Inc., 230 Conn. 622, 638
(1994); O'Neil v. Carolina Freight Carriers Corp., 156 Conn. 613, 618
(1968). Although the court could find no Connecticut case directly on point, it has been generally held that: "In suits for relief by injunction the court in the exercise of its discretion will consider the injury or inconvenience which will result to third persons by the issuance of the injunction, "injunctions." CJS p. 851, 2000 Supplement. Also see Oburnv. Sharp, 521 F.2d 142, 147 (CA 3, 1975); Minnesota Bearing Co. v. WhiteMountains Corp., 470 F.2d 1323, 1326 (CA 8, 1973). See also 42 Am.Jur.2d, "Injunctions," § 36, p. 618-619. Professor Dobbs in Volume 1 of The Law of Remedies, § 2.4(5), p. 111, says that:
 "Courts have traditionally said they would balance the public interest and even the interests of third parties in determining whether or not to issue equitable relief."
This is not to say that under the guise "balancing the equities" a court can properly deny all the rights of the party to any remedy, cf.Tennessee Valley Authority v. Hill, 437 U.S. 153 (1978), but the court can certainly take into account the effect of its action on third parties, innocent on the record, of any wrongdoing. Here, for example, injunctive relief, if granted, might conceivably be ordered to start forthwith or at some point in the present school year. It can be said that Laidlaw should have the right to come into court and argue the harm that will be visited upon it if its contract is abrogated this school year or even next school year. Thus, it might be argued that equitable relief should be denied the plaintiff altogether on the principle that "equity aids the vigilant" and that injunctive relief "is available only to those who show reasonable diligence in asserting their rights," 42 Am.Jur.2d, "Injunctions," § 41, p. 625, also see discussion on TheLaw of Remedies, Dobbs, 2d ed, Vol. I, § 2.3(5), pp. 84-90 where the doctrines of estoppel and laches are discussed. Here, as previously mentioned, a temporary restraining order was requested prior to the actual commencement of the Laidlaw contract in 1998. No permanent injunction was sought by the plaintiff so no appeal could lie from the denial of the temporary injunction. Now, in the fail of 2000, two years CT Page 2885 after the Laidlaw contract began, the plaintiff seeks to come into court and in effect by the relief requested inform Laidlaw it has no contract for the next two or two and a-half years, but no matter, you can always sue Hartford for damages. Under all these circumstances, no appropriate balancing of interest test, taking into account the possible harm to Laidlaw, could fairly preclude Laidlaw's presence in this litigation. As Moore says, practice under Federal Rule 19 "does not require an absolute showing that the absentee's interest will necessarily be harmed by nonjoinder; rather, it is concerned that nonjoinder "may' result in such harm Moore's Federal Practice, 3d ed., Vol. 4, § 19.03(3)(c). pp. 19-50. Who better than Laidlaw to come into court and explain the harm that will be visited upon it if the contract is terminated sooner rather than later, this year or beginning next September?
But the discussion cannot end here, for it should be noted, in fairness, that the court has taken into account a principle embedded in anti-trust law that would seem to militate against a party like Laidlaw under present circumstances being given the opportunity to contest the plaintiff's request for injunctive relief based on the plaintiff's delay in pursuing such relief.
That is, the injunctive relief request insofar as it is based on a claim under the state Anti-Trust Act, § 35-24 et seq. should take into account § 35-44b where the legislature made it clear that our courts "shall be guided by interpretations given by the federal courts to federal anti-trust statutes." As regards application of the broad common law defenses to the federal government it has been said: "It is settled beyond controversy that the United States, when asserting `sovereign' or governmental rights, is not subject to either state statutes of limitation or laches . . . the doctrine of laches is not applicable to the government." Chesapeake Delaware Canal Co. v. U.S., 250 U.S. 123,125 (1919). From this it follows that, "The equitable defenses of waiver, estoppel and unclean hands are inapplicable to a suit brought by the government in a sovereign capacity to enforce the federal antitrust laws as are the defenses of ratification and laches," 54 Am.Jur.2d, "Monopolies and Restraints of Trade," § 524, p. 553; U.S. v. SouthernMotor Carriers Rate Conference, 439 F. Sup. 29, 52 (ND. Ga., 1977), cf.U.S. v. Iron Mountain Mines, 812 F. Sup. 1528, 1546 (ED Cal., 1992).
Using this law as a reference point and characterizing private parties suing under the federal antitrust laws as private attorney generals it has also been held that, "In general, it is inappropriate to invoke broad common law defenses as barriers to relief in private antitrust suits which serve important public interests and there is nothing in the antitrust laws which indicates that Congress intended such a result," 54 Am.Jur.2d, supra, at § 524, p. 553. But then the commentary goes on CT Page 2886 to note what appears to be a qualification when it says, for example, that: "Despite the fact that common law defenses cannot be allowed to thwart the purposes of the antitrust laws, various defenses such as that embodied in the "unclean hands' doctrine have been sanctioned in appropriate cases." The Connecticut statutory scheme is also somewhat confusing because although in § 35-44 (b) it refers our courts to federal court interpretations of federal anti-trust law when interpreting various sections of our act, when one looks at § 35-34 that section says, referring to injunctive relief, "In such actions, the court shall follow the rules and principles governing the granting of injunctive relief." Well, estoppel, laches, balancing of equities are certainly part of the considerations Connecticut courts have taken into account in deciding the propriety of injunctive relief. Besides, this appears to be an "appropriate" case to consider whether or not an estoppel or laches argument should apply with respect to any request for injunctive relief that in effect abrogates the contract rights of a third party against whom no evidence of wrongdoing was presented at the damage trial against the defendant Hartford. And in any event, why should not Laidlaw have a right to make these arguments and counter arguments since it is Laidlaw whose rights may be impaired? For all of these reasons the court rejects the notion that Laidlaw need not be joined because a jury in an action against Hartford found the Hartford-Laidlaw contract illegal by ruling in if the plaintiff's favor on its anti-trust claim.
 (III)
There is another consideration taken into account by the federal courts under Rule 19 that has not been referred to by the parties in deciding whether joinder is necessary and even indispensable. Some federal courts will not provide for compulsory joinder if the absentee is already receiving "adequate representation." Here, it might be argued that the defendant city would make the same arguments and advance the same interests as Laidlaw so why should Laidlaw be joined, see discussion in Moore at § 19.03(3)(f), pp. 19-56-1956.1. In Washington v. Daley,173 F.3d 1158, 1167 (CA 9, 1999), the court said: "As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit when its interest will be adequately represented by existing parties to the suit."
Not all federal courts subscribe to this rule apparently. If an absentee has an interest that might be directly affected by an action of the court, it is difficult to understand why the absentee should not be joined to the case. Even if the adequate representation consideration rule is accepted, in this court's opinion it should not come into play in deciding in the first instance if an absentee is "necessary" and some courts do take this position, see Washington v. Daley, 173 F.3d 1158 (CA CT Page 2887 9, 1999), cf. Eldridge v. Carpenters 46, et al, 662 F.2d 534 (CA 9, 1981). The adequate representation consideration should only be taken into account where an absentee has been found to be "necessary" and then for some reason (e.g. its presence would destroy diversity in federal court) it is not feasible to join the party that is, the absentee is the type of necessary party who is also indispensable. The court can then consider not dismissing the case because the absentee is, after all, receiving adequate representation, see Professional Hockey Club v.Detroit Red Wings, 787 F. Sup. 706, 712 (E.D., Mich., 1992), RochesterMem. Hospital v. Travelers Ins. Co., 728 F.2d 1006, 1016 (CA, 8, 1994). The latter approach is preferable and means that if an absentee is found to be necessary the absentee is ordered into the case, if this is not feasible the court then considers the indispensability factor, one of whose components is the question of adequate representation.
But even in jurisdictions that factor in the adequate representation issue into the initial consideration as to whether a party is "necessary," Moore notes that one thing taken into account is "whether the absent party would offer any necessary elements to the proceedings that the present parties would neglect," id. p. 19-56.1. Again, this is an injunction matter and for the reasons previously discussed Laidlaw should be allowed to offer evidence and information to the court necessarily known only to it, which might have a bearing on the scope of injunctive relief.
For the foregoing reasons, the court concludes Laidlaw is a necessary party and should be joined by the defendant to this action for injunctive relief within thirty days. The court would request that counsel provide Laidlaw or its counsel with copies of the pleadings and of this decision. If for some reason Laidlaw cannot be joined or once joined disclaims any interest in this matter or if it determines the representation provided to its interests by the defendant city is "adequate," then the court may or may not find it is required to go on to consider whether Laidlaw is an indispensable party.
Corradino, J.