**Maxine KESCOLI, Plaintiff–Appellant,**

**v.**

**Bruce BABBITT, The Office of Surface Mining Reclamation and Enforcement, and The Office of Hearings and Appeals, Defendants–Appellees,**

**and**

**Peabody Western Coal Company, Intervenor–Appellee.**

No. 94–17125.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1996.

Submission Deferred June 14, 1996.

Resubmitted Oct. 28, 1996.

Decided Nov. 22, 1996.

U.S.C. § 1618(a).

Timothy A. Heydinger, DNA People's Legal Services, Inc., Chinle, AZ, and Timothy N. Black, Wilmer, Cutler & Pickering, Washington, DC, for plaintiff-appellant.

David C. Shilton, United States Department of Justice, Washington, DC, for defendants-appellees.

James R. Bird, Shea & Gardner, Washington, DC, for intervenor-appellee, Peabody Western Coal Company.

Before: THOMPSON, KLEINFELD and TASHIMA, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Peabody Western Coal Company (Peabody) conducts coal mining operations at the Kayenta/Black Mesa mining complex pursuant to lease agreements entered into with the Navajo Nation and the Hopi Tribe. The United States Department of the Interior Office of Surface Mining (OSM) issued a permit to Peabody, which contained eighteen special conditions, governing Peabody's mining activities under the lease agreements at the Kayenta mine complex. Peabody challenged the majority of the special conditions. The present dispute arises out of the modification of special condition one through a settlement agreement entered into among Peabody, the OSM, the Navajo Nation, and the Hopi Tribe.

Maxine Kescoli, an enrolled member of the Navajo Nation, opposes the settlement of special condition one because she believes the condition, as modified by the settlement, does not guarantee adequate protection of sacred burial sites. After an Administrative Law Judge (ALJ) and the Interior Board of Land Appeals (IBLA) approved the settlement, Kescoli brought this action in the district court, naming as defendants the Secretary of the Interior, the OSM, and the IBLA. Kescoli sought a declaration that the modified condition was invalid.

The district court determined that Peabody was a necessary party, and that the Navajo Nation and the Hopi Tribe were necessary and indispensable parties that could not be joined due to their sovereign immunity. The court then dismissed the action under Federal Rule of Civil Procedure 19(b). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS

In approximately 1970, Peabody began its coal mining operations at the Kayenta/Black Mesa mine complexes. Although the mine complexes are located on the Navajo Nation's reservation, the Navajo Nation and the Hopi Tribe are joint owners of some of the subsurface minerals. 25 U.S.C. § 640d–6.

In 1984, the OSM issued new regulations governing the permitting of mining operations on Native American lands. The new regulations required permits for all mining operations, but allowed existing mining operations to continue while awaiting action on permit applications.

In 1984, Peabody submitted a permit application for the Kayenta/Black Mesa mining complexes. Between 1985 and early 1990, the OSM was considering the application and preparing an environmental impact statement (EIS) addressing the Kayenta/Black Mesa mining operation. The EIS recommended approval of Peabody's permit application, subject to special conditions, to ensure compliance with the Surface Mining Control and Reclamation Act (SMCRA) and other federal laws.

In July 1990, the OSM issued permit AZ–0001C. This permit was limited to the Kayenta mine. The OSM reserved action on the Black Mesa mine. The permit included eighteen special conditions. At dispute in the present appeal is special condition one, which originally provided:

> Within 30 days of permit issuance, [Peabody] shall submit to OSM a description of measures, in addition to those proposed in the permit application package as it applies to the Kayenta Mine (PAP/KM), that [Peabody] will take to mitigate impacts on sacred and ceremonial sites. Such measures shall include: (1) verification, and mitigation of impacts where necessary, of the sacred and ceremonial resources identified in OSM's "Black Mesa–Kayenta Mine Final Socioeconomic Technical Report;" (2) coordination with any sacred site advisory committee formed by the Hopi or Navajo Tribe for exchanging information regarding sacred site concerns; and (3) means to resolve disputes between PCC and the Tribes regarding sacred and ceremonial sites.

In August 1990, Peabody challenged thirteen of the special conditions, including special condition one, and filed a request for review. The ALJ permitted the Navajo Nation, the Hopi Tribe, and Kescoli to intervene.

After several hearings and after the parties had reached agreement on nine of the

special conditions, the ALJ asked the parties to continue to pursue a settlement of the remaining conditions. After extensive negotiations, Peabody, the OSM, the Navajo Nation, and the Hopi Tribe reached an agreement on special condition one.

As modified by the settlement, special condition one: (1) adopts procedures to identify concerns about the impact of mining on religious and ceremonial locations; (2) addresses methods by which the Navajo Nation, the Hopi Tribe, and individual tribal members can communicate their concerns to Peabody, assuring that those communications will be kept confidential; (3) imposes an obligation on Peabody to meet annually with the Navajo Nation, the Hopi Tribe, and the OSM "to review the progress of the mining operation and future mining plans in order to keep the tribes informed concerning the anticipated schedule of areas to be disturbed;" and (4) imposes an obligation on the OSM to evaluate the procedures used to protect the religious sites at the end of the five-year permit to determine if revisions are needed.

Kescoli opposes the modification to condition one. She argues the original condition adequately protected burial sites, but the modified condition does not. Specifically, she argues the modified condition will permit Peabody to mine within 100 feet of a burial site, in violation of the SMCRA, 30 U.S.C. § 1272(e)(5).

In 1992, the ALJ approved the settlement, addressing special condition one. The ALJ determined the settlement satisfied the concerns underlying the original condition and "more adequately addresse[d]" the OSM's desire to improve communications between Peabody and the Tribes, and the Tribes' desire for confidentiality and regular review of Peabody's mining operations. With regard to mining near burial sites, the ALJ determined that Kescoli could not challenge whether the permit adequately protects burial sites because the proceeding was limited to a challenge to the special conditions rather than to the issuance of the permit.

Kescoli then filed a petition for review with the IBLA. The IBLA affirmed the ALJ's approval of the settlement of special condition one. The IBLA found the settlement agreement to be "fair, adequate, reasonable" and not in violation of the SMCRA. Specifically, the IBLA found that the modified condition did not diminish Peabody's mitigation obligations and that federal law and the Navajo Burial Policy provide "ample protection for the known burials sacred to Kescoli." The IBLA denied Kescoli's request for reconsideration.

Kescoli then filed a petition for review in the district court. That court dismissed Kescoli's petition, because it determined the Navajo Nation and the Hopi Tribe were necessary and indispensable parties who could not be joined due to their sovereign immunity. Kescoli appeals.[1]

## DISCUSSION

### A. Mootness

We first must determine whether Kescoli's appeal is moot. After the filing of the parties' initial briefing, permit AZ–0001C expired. We issued an order requiring the parties to submit supplemental briefing addressing whether the appeal is moot. Peabody, who intervened in the action, and the Secretary of the Interior then moved to dismiss the appeal on mootness grounds.

 If the appeal is moot, we lack jurisdiction over the appeal. *In re Bunker Ltd. Partnership*, 820 F.2d 308, 310 (9th Cir. 1987). The appeal is moot if "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Friends of Payette v. Horseshoe Bend Hydroelec.*, 988 F.2d 989, 996 (9th Cir. 1993) (quotation omitted).

 On July 6, 1995, permit AZ–0001C was superseded by renewal permit AZ–0001D. In permit AZ–0001D, special condition one now reads:

[Peabody] must continue to adhere to the requirements of the Settlement Agree-

---

1. Peabody was not a party to this litigation in the district court. We granted its unopposed motion to intervene as an appellee in this appeal.

ment approved by the Administrative Law Judge on July 2, 1992 regarding the appeal of Special Condition No. 1 attached to the AZ–0001C permit on July 6, 1990. In addition, OSM will evaluate the success of the enhancement program proposed by [Peabody] in a letter to the [OSM] dated June 23, 1995, 18 months into the permit AZ–0001D term. This evaluation will include the determination of whether additional requirements are necessary to enhance the protection of religious/ceremonial sites.

Although the original permit has expired, the special condition challenged by Kescoli is still in effect. The only modification to the special condition is the addition of the enhancement program. This does not materially modify the terms of special condition one.

The present appeal is distinguishable from the appeal in *Northwest Resource Info. Center v. NMFS,* 56 F.3d 1060 (9th Cir.1995). In *Northwest,* the appeal challenged agency action which had already "beg[un] and ended." *Id.* at 1069. Relying on the well-established rule that a case is moot if the court cannot "undo what has already been done," we concluded the appeal was moot. *Id.* at 1069 (quoting *Friends of the Earth v. Bergland,* 576 F.2d 1377, 1379 (9th Cir.1978)).

In the present appeal, however, the same condition is still in effect and continues to govern Peabody's coal mining operations at the Kayenta complex. The same controversy exists after the issuance of the renewal permit: does special condition one, under which Peabody is mining at the Kayenta complex, allow Peabody to mine within 100 feet of a burial site. We, therefore, conclude the appeal is not moot and deny the motion to dismiss the appeal.

**B. Joinder**

**1. Standard of Review**

■ The joinder determination is "a practical one and fact specific." *Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir. 1990). We generally review for an abuse of discretion the district court's joinder determinations under Rule 19. *United States ex rel. Morongo Band of Mission Indians v.*

*Rose,* 34 F.3d 901, 907 (9th Cir.1994). However, if the district court's decision that an absent party's interest would be impaired involves a legal determination, we review de novo that determination. *Id.*

■ Whether an action should be dismissed under Rule 19 involves a two-part analysis. *Id.* First, the district court must determine whether the absent party is a "necessary" party. *Id.* If the absent party is necessary and cannot be joined, the court next must determine whether the party is "indispensable." *Makah,* 910 F.2d at 558. Because Peabody can be joined in the action, our review is limited to whether the Navajo Nation and the Hopi Tribe are necessary and indispensable parties.

**2. Necessary Party**

Under Rule 19(a)(2)(i), absent parties are necessary if they "claim[ ] an interest relating to the subject of the action and [are] so situated that the disposition of the action in the [parties'] absence may ... as a practical matter impair or impede the [parties'] ability to protect that interest." Fed.R.Civ.P. 19(a)(2)(i).

■ In this action, Kescoli seeks to invalidate the settlement of special condition one and to reinstate the original condition or to obtain a remand to the ALJ so the parties can renegotiate the condition and agree upon a condition which would provide greater protection for burial sites. The district court determined that Peabody, the Navajo Nation, and the Hopi Tribe have an interest in the litigation by virtue of their lease agreements. The district court reasoned:

> The court assumes that the Navajo Nation and Hopi Tribes entered into the settlement on Special Condition One because they felt it struck a proper balance between sacred and burial site protection and economic gain. If Ms. Kescoli prevailed in obtaining the relief she requests, this balance would be disturbed.

The district court did not err in determining that the Navajo Nation and the Hopi Tribe are necessary parties. The settlement of special condition one affected the conditions under which Peabody may mine at the

Kayenta complex and, thus, could affect Peabody's mining operations under the lease agreements. In turn, this could affect the amount of royalties received by the Navajo Nation and the Hopi Tribe and employment opportunities for their members.

Further, the Navajo Nation and the Hopi Tribe, by virtue of their sovereign capacity, have an interest in determining what is in their best interests by striking an appropriate balance between receiving royalties from the mining and the protection of their sacred sites. *See Pit River Home and Agric. Coop. Ass'n v. United States,* 30 F.3d 1088, 1099, 1101 (9th Cir.1994). In her action, Kescoli challenges the balance struck by the Navajo Nation and the Hopi Tribe.

Kescoli, however, argues that she does not seek to challenge the validity of the lease agreements, but seeks only to enforce the OSM's obligation to ensure mining does not occur within 100 feet of a burial site. For this argument, Kescoli relies on *Makah Indian Tribe v. Verity.* In *Makah,* the Makah Tribe challenged the Secretary's allocation of an ocean harvest for salmon. We rejected the Secretary's argument that the other tribes who were entitled to the harvest were necessary parties to a claim for prospective relief presented by the Makah Tribe. 910 F.2d at 559. This claim alleged that the Secretary's regulations affecting the harvest were invalid because the quotas were set in secret meetings and without an opportunity for notice and comment. *Id.* We concluded the other tribes were not necessary because the Makah Tribe sought only prospective relief "that would affect only the future conduct of the administrative process...." *Id.* We reasoned, "The absent tribes would not be prejudiced because all of the tribes have an equal interest in an administrative process that is lawful." *Id.*

The present case is distinguishable. Kescoli's action could affect the Navajo Nation's and the Hopi Tribe's interests in their lease agreements and the ability to obtain the bargained-for royalties and jobs. Kescoli's action would directly affect the parties' settlement agreement and indirectly affect the parties' lease agreements by challenging the conditions under which Peabody may mine at the Kayenta complex. Her action is not limited to merely requiring the OSM to comply with procedural obligations in the future.

### 3. Sovereign Immunity

Because the Navajo Nation and the Hopi Tribe are necessary parties, the next question is whether they can be joined in the action. *Pit,* 30 F.3d at 1099. The sovereign immunity of the Navajo Nation and the Hopi Tribe, conceded by the parties, prevents them from being joined involuntarily unless they waive their immunity. *McClendon v. United States,* 885 F.2d 627, 629 (9th Cir. 1989). Any waiver must be unequivocal and may not be implied. *Id.*

Contrary to Kescoli's implication, the Navajo Nation and the Hopi Tribe did not waive their immunity by intervening in the administrative proceedings before the ALJ and the IBLA. *Quileute Indian Tribe v. Babbitt,* 18 F.3d 1456, 1459–60 (9th Cir.1994). "[A] tribe's participation in an administrative proceeding does not waive tribal immunity in an action filed by another party seeking review of the agency's decision." *Id.* at 1460; *see also McClendon,* 885 F.2d at 629–31 ("a tribe's waiver of sovereign immunity [by initiation of a lawsuit] may be limited to the issues necessary to decide the action"). The district court, therefore, did not err in determining the Navajo Nation and the Hopi Tribe could not feasibly be joined in the action.

### 4. Indispensable Party

The Navajo Nation and the Hopi Tribe are indispensable parties if, "in equity and good conscience," the district court should not allow the action to proceed in their absence. Fed.R.Civ.P. 19(b); *Morongo Band,* 34 F.3d at 907. To make this determination, the district court balances four factors:

(1) prejudice to any party or to the absent party;

(2) whether relief can be shaped to lessen prejudice;

(3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and

(4) whether there exists an alternative forum.

*Quileute,* 18 F.3d at 1460. If no alternative forum exists, the district court should be "extra cautious" before dismissing an action. *Makah,* 910 F.2d at 560.

■ The district court determined that, although the factors were not clearly in favor of dismissal, the concern for the protection of tribal sovereignty warranted dismissal. The district court did not abuse its discretion in making this determination.

With regard to the first factor, as discussed above, the Navajo Nation and the Hopi Tribe have an interest in the litigation by virtue of their lease and settlement agreements. Thus, the first factor weighs in favor of dismissal. *See Quileute,* 18 F.3d at 1460 (stating first factor involves same analysis as impaired interest analysis).

With regard to the second factor, the district court correctly determined that potential prejudice to the Navajo Nation and Hopi Tribe could not be effectively minimized because relief for Kescoli could not be effectively shaped, in their absence, to avoid prejudice to their interests. *See Makah,* 910 F.2d at 560 (prejudice not lessened if tribes required to intervene and waive sovereign immunity).

■ Although the third and fourth factors may favor allowing Kescoli to proceed with her action, we have "recognized that a plaintiff's interest in litigating a claim may be outweighed by a tribe's interest in maintaining its sovereign immunity." *Confederated Tribes v. Lujan,* 928 F.2d 1496, 1500 (9th Cir.1991). If the necessary party is immune from suit, there may be "very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor." *Id.* at 1499.

Based on the need to protect tribal sovereignty and because the factors do not clearly weigh in favor of allowing Kescoli to proceed with her action, the district court correctly determined that the Navajo Nation and Hopi Tribe are indispensable parties.

5. Public Rights Exception

■ Kescoli argues she should be permitted to continue with her action because it falls within the "public rights" exception. Under this exception, even if the Navajo Nation and the Hopi Tribe are necessary parties, they are not deemed indispensable and, consequently, dismissal is not warranted. *Makah,* 910 F.2d at 559 n. 6.

■ The contours of the public rights exception have not been clearly defined. Generally, however, the litigation must transcend the private interests of the litigants and seek to vindicate a public right. *See Kickapoo Tribe of Indians v. Babbitt,* 43 F.3d 1491, 1500 (D.C.Cir.1995). Further, although the litigation may adversely affect the absent parties' interests, the litigation must not "destroy the legal entitlements of the absent parties." *Conner v. Burford,* 848 F.2d 1441, 1459 (9th Cir.1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989); *see also Shermoen v. United States,* 982 F.2d 1312, 1319 (9th Cir.1992), *cert. denied,* 509 U.S. 903, 113 S.Ct. 2993, 125 L.Ed.2d 688 (1993). The present litigation does not satisfy either criterion.

■ As the district court determined, Kescoli's claim "is a private one focused on the merits of her dispute rather than on vindicating a larger public interest." Although Kescoli purports to represent others who believe the burial sites should receive maximum protection, the essence of her dispute is her disagreement with the Tribal leaders over what is in the best interests of the Navajo Nation and the Hopi Tribe. She believes additional protection for the burial sites is necessary. The Navajo Nation and the Hopi Tribe, however, by agreeing to the settlement have decided this protection is sufficient and the settlement agreement should be implemented so that they will receive the desired royalties. Kescoli's action is essentially private in nature, limited to a disagreement over the appropriate direction the Navajo Nation and the Hopi Tribe should take in relation to the mining.

Further, if the action proceeded in the absence of the Navajo Nation and the Hopi Tribe, the rights of their members under the

lease agreements could be significantly affected.

The litigation also threatens the Navajo Nation's and the Hopi Tribe's sovereignty by attempting to disrupt their ability to govern themselves and to determine what is in their best interests in balancing potential harm caused by the mining operations against the benefits of the royalty payments. Contrary to *Makah,* the present litigation is not limited to ensuring an agency's future compliance with statutory procedures and is not one in which the risk of prejudice to the Navajo Nation and the Hopi Tribe is nonexistent or minimal. *See Makah,* 910 F.2d at 559–60 n. 6.

In view of the essentially private nature of the present litigation and the significant threat to the Navajo Nation's and the Hopi Tribe's interests, the application of the public rights exception is not appropriate. *See Shermoen,* 982 F.2d at 1319.

AFFIRMED.