Harold DAWAVENDEWA, a single
man, Plaintiff–Appellant,

v.

SALT RIVER PROJECT AGRICUL-
TURAL IMPROVEMENT AND POW-
ER DISTRICT, an Arizona corpora-
tion, Defendant–Appellee,

The Navajo Nation, Appellee.

No. 00–16787.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 17, 2001.

Filed Jan. 2, 2002.

Bradley H. Schleier, Schleier, Jellision & Schleier, P.C., Phoenix, Arizona, for the plaintiff-appellant.

John J. Egbert, Jennings, Strouss & Salmon, P.L.C., Phoenix, Arizona, for the defendant-appellee.

Before: BEEZER, TROTT, and TALLMAN, Circuit Judges.

TROTT, Circuit Judge:

## OVERVIEW

Harold Dawavendewa ("Dawavendewa") sued the Salt River Project Agricultural Improvement and Power District ("SRP") for employing a hiring preference policy in violation of Title VII of the Civil Rights Act of 1964.[1] In particular, he alleged that SRP's lease with the Navajo Nation ("Nation") required it to preferentially hire Navajos at the Navajo Generating Station ("NGS"). The district court dismissed Dawavendewa's complaint for failure to join the Nation as an indispensable party.

Pursuant to 28 U.S.C. § 1291, we have jurisdiction over Dawavendewa's timely appeal. As a signatory to the lease, we conclude the Nation is a necessary party that cannot be joined because it enjoys tribal sovereign immunity. We further

conclude that tribal officials cannot be joined to replace the immune Nation; rather, the Nation itself is indispensable to this suit. Accordingly, we affirm the district court's dismissal of Dawavendewa's complaint without prejudice.

## BACKGROUND

SRP operates NGS on reservation lands leased directly from the Navajo Nation. As required by its lease, SRP extends employment preferences to qualified local Navajos at NGS.[2] This lease provision mirrors the Navajo Preference in Employment Act ("NPEA") which states: "[a]ll employers doing business ... [on or near the reservation] of the Navajo Nation ... shall ... [g]ive preference in employment to Navajos." Nation Code tit. 15, § 604 (1995). "Preference in employment shall include specific Navajo affirmative action plans and timetables for all phases of employment to achieve the Navajo Nation goal of employing Navajos in all job classifications including supervisory and management positions." *Id.*

Dawavendewa, a member of the Hopi Tribe, lives less than three miles from the Navajo reservation. Dawavendewa applied for employment as an Operator Trainee at NGS. After a qualifications test,

---

1. In pertinent part 42 U.S.C. § 2000e–2 reads:

 It shall be an unlawful employment practice for an employer—
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

2. The lease provision at issue reads as follows:

 Lessees agree to give preference in employment to qualified local Navajos, it being understood that "local Navajos" means

members of the Navajo Tribe living on land within the jurisdiction of the Navajo Tribe. All unskilled labor shall be employed from "local Navajos," if available, providing that applicants for employment as unskilled laborers meet the general employment qualifications established by Lessees. Qualified semi-skilled and skilled labor shall be recruited and employed from among "local Navajos." In the event sufficient qualified unskilled, semi-skilled and skilled local Navajo labor is not available, or the quality of work of available skilled or semi-skilled workmen is not acceptable to Lessees, Lessees may then employ, in order of preference, first, qualified non-local Navajos, and second, non-Navajos.

Dawavendewa ranked ninth out of twenty applicants. Yet, because Dawavendewa is not affiliated with the Nation, he was never interviewed for the Operator Trainee position.

Dawavendewa filed a complaint in district court accusing SRP of discriminating against him on the basis of his national origin in violation of Title VII. Dawavendewa's complaint asserted no causes of action against the Nation or tribal officials, and they are not parties to this litigation. SRP moved to dismiss Dawavendewa's complaint on the grounds that a hiring preference policy based on tribal affiliation does not constitute national origin discrimination or, in the alternative, that Title VII's Indian preference exemption[3] expressly shelters tribal hiring policies from liability. The district court granted SRP's motion to dismiss, holding that the Indian preferences exemption excludes from liability hiring preference policies based on tribal affiliation.

On appeal, we reversed and remanded. *See Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 154 F.3d 1117, 1120 (9th Cir.1998) (*Dawavendewa I*). We concluded that (1) as described in the complaint, differential employment treatment based on tribal affiliation is actionable as national origin discrimination under Title VII; and (2) the Indian preferences exemption in Title VII does not shelter this conduct. *Id.* at 1124.

SRP appealed our decision in *Dawavendewa I* to the Supreme Court. The Solicitor General submitted an amicus brief arguing against the grant of certiorari because "this case is in an interlocutory posture, and [SRP] would not be barred

from presenting other arguments in defense of its preference [policy] on remand." Indeed, no court had yet considered Dawavendewa's suit on the merits or whether any legal justification, such as treaty rights or the federal policy encouraging tribal self governance excused SRP's Navajo preference policy. The Supreme Court denied certiorari. *See Salt River Project Agric. Improvement & Power Dist. v. Dawavendewa*, 528 U.S. 1098, 120 S.Ct. 843, 145 L.Ed.2d 708 (2000).

On remand to the district court, SRP moved to dismiss Dawavendewa's complaint for failure to join the Nation as an indispensable party. The district court ruled that the Nation was an indispensable party and granted SRP's motion.

Dawavendewa appeals that determination.

## STANDARD OF REVIEW

We review a district court's decision to dismiss for failure to join an indispensable party for abuse of discretion. *See Clinton v. Babbitt*, 180 F.3d 1081, 1086 (9th Cir.1999); *Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir.1996). "To the extent that the district court's determination whether a party's interest is impaired involves a question of law, we review de novo." *Pit River Home & Agric. Coop. Assoc. v. United States*, 30 F.3d 1088, 1098 (9th Cir.1994).

## DISCUSSION

Application of Federal Rule of Civil Procedure 19 determines whether a party is indispensable. The inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application.

---

**3.** The Indian Preferences exemption codified at 42 U.S.C. § 2000e–2(i) states:

Nothing contained in this subchapter shall apply to any business or enterprise on or near an Indian reservation with respect to

any publicly announced employment practice of such business or enterprise under which a preferential treatment is given to any individual because he is an Indian living on or near a reservation.

*See Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir.1990). We must determine: (1) whether an absent party is necessary to the action; and then, (2) if the party is necessary, but cannot be joined, whether the party is indispensable such that in "equity and good conscience" the suit should be dismissed. *Confederated Tribes v. Lujan*, 928 F.2d 1496, 1498 (9th Cir.1991) (quoting *Makah Indian Tribe*, 910 F.2d at 558).

## I Necessary Party

 In determining whether the Nation is necessary under Rule 19,[4] we consider whether, in the absence of the Nation, complete relief can be accorded to Dawavendewa. *See Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir.1992). In the alternative, we consider whether the Nation claims a legally protected interest[5] in the subject of the suit such that a decision in its absence will (1) impair or impede its ability to protect that interest; or (2) expose SRP and Dawavendewa to the risk of multiple or inconsistent obligations by reason of that interest. *See* Fed.R.Civ.P. 19(a)(2); *Makah Indian Tribe*, 910 F.2d at 558. If the Nation satisfies either of these alternative tests, it

is necessary to the instant litigation. *See Clinton*, 180 F.3d at 1088.

## A. In the Absence of the Navajo Nation, Complete Relief Cannot Be Accorded To Dawavendewa

 Even if ultimately victorious in federal court, Dawavendewa cannot be accorded complete relief in the absence of the Nation. Dawavendewa seeks injunctive relief to ensure his employment at SRP and to prevent SRP from employing the Navajo hiring preference policy required by its lease with the Nation. Yet only SRP and Dawavendewa—and not the Nation—would be bound by such an injunction. The Nation could still attempt to enforce the lease provision in tribal court and ultimately, even attempt to terminate SRP's rights on the reservation. The district court correctly observed that "if SRP were to ignore [the] injunction, [Dawavendewa] and others like him would not receive the employment they seek," whereas "[i]f SRP were to comply with the injunction, the Navajo Nation would be likely to take action against SRP under its lease."

We faced a similar situation in *Confederated Tribes* where we addressed an action

---

**4.** Federal Rule of Civil Procedure 19(a) reads:

**Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that

the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

**5.** A claimed interest must be more than speculation about future events. *See McLaughlin v. Int'l Ass'n of Machinists & Aerospace Workers*, 847 F.2d 620, 621 (9th Cir.1988). Nevertheless, an absent party need merely *"claim"* a legally protected interest in the suit because "[j]ust adjudication of claims requires that courts protect a party's right to be heard and to participate in adjudication of a claimed interest, even if the dispute is ultimately resolved to the detriment of that party." *Shermoen*, 982 F.2d at 1317.

brought by various Indian Tribes against federal officials challenging the United States' continued recognition of the Quinault Indian Nation as the sole governing authority of the Quinault Indian Reservation. 928 F.2d at 1497. In affirming the district court's dismissal of the case for failure to join the Quinault Nation as an indispensable party, we held that "success by the plaintiffs . . . would not afford complete relief to them" because "[j]udgment against the federal officials would not be binding on the Quinault Nation, which could continue to assert sovereign powers and management responsibilities over the reservation." *Id.* at 1498.

Likewise, in *Pit River Home*, plaintiff Association sought judicial review of the Secretary of Interior's designation of the Pit River Tribal Council as the beneficiary of reservation property. 30 F.3d at 1092. We affirmed the district court's dismissal of the suit for the Association's failure to join the Council as an indispensable party. In doing so, we opined that "even if the Association obtained its requested relief . . . it would not have complete relief, since judgment against the government would not bind the Council, which could continue to assert its right to [] the [property]." *Id.* at 1099.

Dawavendewa stands in the same position as the plaintiff Association in *Pit River Home* and the various Indian Tribes in *Confederated Tribes:* he is not assured complete relief even if victorious. Indeed, if the federal court granted Dawavendewa's requested injunctive relief, SRP would be between the proverbial rock and a hard place—comply with the injunction prohibiting the hiring preference policy or comply with the lease requiring it. If, in resolving this quandary, SRP declines to abide by the injunction and instead continues to comply with its lease obligations, Dawavendewa would not be accorded com-

plete relief. Thus, under Rule 19(a)(1), the Nation is a necessary party.

## B. Impairment of the Nation's Legally Protected Interest

■ The Nation is also a necessary party to Dawavendewa's action against SRP under the second prong of Rule 19(a). Under Rule 19(a)(2), an absent party is necessary if it claims "an interest relating to the subject of the action," and disposition of the action in its absence may "as a practical matter impair or impede [its] ability to protect that interest." Fed. R. Civ. P. 19(a)(2)(i).

Here, the Nation claims a legally protected interest in its contract rights with SRP. In *Lomayaktewa v. Hathaway* we observed that, "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." 520 F.2d 1324, 1325 (9th Cir.1975). Accordingly, we held unequivocally that the Hopi Tribe was a necessary (and indispensable) party to a suit by an individual challenging a lease between the Hopi Tribe and the Peabody Coal Company simply by virtue of being a signatory to the lease. *See id.* at 1326.

Since *Lomayaktewa* we have reiterated this fundamental principle on numerous occasions. In *Kescoli*, for example, a member of the Navajo Nation challenged an agreement among a coal company, the United States Department of Interior Office of Surface Mining, the Navajo Nation, and the Hopi Tribe. 101 F.3d at 1307. She claimed that one lease provision permitted mining too close to Navajo burial sites in violation of federal law, 30 U.S.C. § 1272(e)(5). *See id.* at 1308. We determined that, because a judgment invalidating the challenged provision could cause the entire tapestry of the agreement to unravel, the Hopi Tribe had a legally pro-

tected interest in the lease term. *Id.* at 1310; *see also McClendon v. United States*, 885 F.2d 627, 633 (9th Cir.1989) ("Because the Tribe is a party to the lease agreement sought to be enforced, it is an indispensable party under [Rule] 19.").

Quite similar to the suits in *Lomayakte-wa* and *Kescoli,* the instant litigation threatens to impair the Nation's contractual interests, and thus, its fundamental economic relationship with SRP. The Nation strenuously emphasizes the importance of the hiring preference policy to its economic well-being. In fact, the Nation asserts that "[without the hiring preference provision], the Navajo Nation leadership would never have approved this lease agreement."

■■■ Thus, today we reaffirm the fundamental principle outlined in *Lomayakte-wa:* a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract.[6] Here, in consideration for "Navajo water and Navajo coal," the Nation bargained for the lease provision requiring SRP to maintain a Navajo hiring preference policy. Because Dawavendewa challenges the Nation's ability to secure employment opportunities and income for the reservation—its fundamental consideration for the lease with SRP—the Nation, like the Hopi Tribe in *Kescoli,* claims a cognizable economic interest in the subject of this litigation which may be grievously impaired by a decision rendered in its absence.

In addition, a judgment rendered in the Nation's absence will impair its sovereign capacity to negotiate contracts and, in general, to govern the Navajo reservation. In *Kescoli,* we determined that, by virtue of its sovereign capacity, the Hopi Tribe

claimed an interest in determining the appropriate balance between alternative lease terms. 101 F.3d at 1309–10. Similarly, the Nation has an interest in determining the appropriate balance between alternative lease terms. Nation Amicus Br. at 7 ("[The lease] has cost Navajo water, Navajo coal, Navajo prime land, and the inevitable pollution of the Navajo homeland. It is a bargained for price that the Navajo Nation alone paid in return for jobs for the Navajo people.").

Undermining the Nation's ability to negotiate contracts also undermines the Nation's ability to govern the reservation effectively and efficiently. *See Pit River Home,* 30 F.3d at 1101 (finding impairment of the Council's legally protected interest in governing the Tribe); *Quileute Indian Tribe v. Babbitt,* 18 F.3d 1456, 1460 (9th Cir.1994) (finding impairment of a legally protected interest where outcome would jeopardize the authority of the Quinaults to govern the reservation); *Confederated Tribes,* 928 F.2d at 1498(finding impairment where plaintiffs sought a complete rejection of the Quinault Nation's ability to govern the reservation). Thus, as a result of its multiple economic and sovereign interests, the Nation sufficiently asserts claims relating to this litigation which may be impaired in its absence. Under Rule 19(a)(2)(i) the Nation is, therefore, a necessary party.

**C. The Substantial Risk of Inconsistent or Multiple Obligations by Virtue of the Nation's Legally Protected Interests**

■■■ Any disposition in the Nation's absence threatens to leave SRP subject to substantial risk of incurring multiple or inconsistent obligations.[7] As explained

---

**6.** We recognize our adoption of *Lomayakte-wa*'s rule requires only that we progress to the analysis of the Nation's sovereign immunity. Nevertheless, we complete the inquiry direct-

ed by Rule 19 as alternative grounds, reinforcing the same conclusion.

**7.** Dawavendewa suggests that inconsistent obligations arise only if the Nation "violates the

above, although an injunction may compel SRP to stop its hiring preference policy and to hire Dawavendewa, an injunction would not bind the Nation, which could continue to enforce the hiring preference policy required by the lease. This scenario leaves SRP facing intractable, mutually exclusive alternatives and thus, subjects SRP to the substantial risk of facing multiple, inconsistent obligations. Thus, we determine that the Nation is also a necessary party under Rule 19(a)(2)(ii).

Dawavendewa contends that SRP does not face this quandary because the Ninth Circuit held in *Dawavendewa I* that SRP's conduct violated Title VII. In fact, Dawavendewa asserts that the district court's sole task on remand is to determine class certification and class relief. On this score, Dawavendewa misapprehends the reach of our prior decision. In *Dawavendewa I*, we held only that a hiring preference policy based on tribal affiliation, as described in the complaint, stated a claim upon which relief could be granted. 154 F.3d at 1124. As pointed out by the Solicitor General's amicus brief, however, we did not address the merits of the Nation's proffered legal justifications in defense of the challenged hiring preference policy. In particular, we declined to consider whether the Nation's 1868 Navajo Treaty, the federal policy fostering tribal self-governance, the NPEA, or any other legal defense justified SRP's hiring preference policy.

Dawavendewa contends that we need not consider these defenses because the Ninth Circuit has already considered and rejected legal defenses based on tribal self-governance and treaty rights in similar situations. Thus, Dawavendewa continues, the Nation's present assertion of these defenses is "baseless, specious, and violative of Rule 11." For support, however, Dawavendewa cites no relevant cases. Instead, he refers us to cases which merely reaffirm the general rule that statutes of general applicability apply to Native Americans on tribal land. *See, e.g., Lumber Indus. Pension Fund v. Warm Springs Forest Prods. Indus.*, 939 F.2d 683 (9th Cir.1991) (applying ERISA to a lumber mill on reservation land); *Donovan v. Coeur d'Alene*, 751 F.2d 1113 (9th Cir. 1985) (applying OSHA standards to a tribal farm).

Dawavendewa neglects to explain that these cases also outline specific exceptions to the general rule—situations in which statutes of general applicability do not apply to Native Americans on tribal lands. *See Coeur d'Alene*, 751 F.2d at 1116. In appropriate situations, federal law yields out of respect for treaty rights or the federal policy fostering tribal self-governance.[8] *See Donovan v. Navajo Forest Prods. Indus.*, 692 F.2d 709, 711–12 (10th Cir.1982) (finding 1868 Navajo Treaty prohibited application of OSHA on Navajo reservation). Dawavendewa cites no cases considering Title VII's application on tribal lands generally, or explaining why an ex-

---

federal law" by not abiding by our decision in *Dawavendewa I*. Yet *Dawavendewa I* did not decide this case on the merits, and in fact, the Nation has already indicated a willingness to enforce its hiring preference policy in tribal court in spite of the outcome in this litigation.

**8.** As expressed in *Choctaw Nation v. Oklahoma*, 397 U.S. 620, 630, 90 S.Ct. 1328, 25 L.Ed.2d 615 (1970): "The Indian Nations did not seek out the United States and agree upon

an exchange of lands in an arm's-length transaction." As a consequence, the Supreme Court has often held that treaties with the Indians should be interpreted "liberally in favor of the Indians," such that any doubtful expressions in them should be resolved in their favor. *See Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 194 n. 5, 119 S.Ct. 1187, 143 L.Ed.2d 270 (1999); *Alaska Pacific Fisheries v. United States*, 248 U.S. 78, 89, 39 S.Ct. 40, 63 L.Ed. 138 (1918).

ception does not apply in this case. He certainly points to no authority, and we find none, construing the 1868 Navajo Treaty as it pertains to Title VII. Without the aide of supporting precedent, we reject Dawavendewa's invitation to ignore the Nation's plausible legal defenses.

Accordingly, we determine that SRP does face the substantial possibility of multiple or inconsistent obligations if the Nation is not a party to this suit. Thus, we conclude that in addition to being necessary as contemplated by Rule 19(a)(1) and 19(a)(2)(i), the Nation is a necessary party as defined by Rule 19(a)(2)(ii).

## II Tribal Sovereign Immunity

■■■ Having determined that the Nation is thrice over a necessary party to the instant litigation, we next consider whether it can feasibly be joined as a party. We hold it cannot. Federally recognized Indian tribes enjoy sovereign immunity from suit, *Pit River Home*, 30 F.3d at 1100, and may not be sued absent an express and unequivocal waiver of immunity by the tribe or abrogation of tribal immunity by Congress. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58–59, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978).

■■■ In this case, the Nation has not waived its tribal sovereign immunity and Congress has not clearly abrogated tribal sovereign immunity in Title VII cases.[9] Dawavendewa, undaunted, argues that tribal sovereign immunity does not exist because the suit could be sustained against tribal officials. We disagree.

■■■ To support this proposition, Dawavendewa relies heavily on *Burlington N.R.R. v. Blackfeet Tribe*, 924 F.2d 899 (9th Cir.1991), and *Arizona Pub. Serv. Co. v. Aspaas*, 77 F.3d 1128 (9th Cir.1996). In *Blackfeet Tribe*, we extended the doctrine of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908),[10] to tribal officials. In particular, we held that, in cases seeking merely prospective relief, sovereign immunity does not extend to tribal officials acting pursuant to an unconstitutional statute. *See Blackfeet Tribe*, 924 F.2d at 901.

In *Aspaas*, the Navajo Supreme Court determined that the Arizona Public Service Company's ("APS") anti-nepotism policy violated Navajo employment discrimination law. APS then filed suit in federal district court seeking injunctive relief against the Navajo Nation, its executive

---

9. In fact, pursuant to 42 U.S.C. § 2000e(b), Indian tribes are specifically exempt from the requirements of Title VII. *See also, e.g., Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (finding that Congress abrogated the States' sovereign immunity by enacting Title VII under the Enforcement Clause, § 5, of the Fourteenth Amendment); *Board of Trustees v. Garrett*, 531 U.S. 356, 374, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (finding ineffective Congress's abrogation of state's sovereign immunity from suit by private individuals for money damages under the ADA).

10. *Ex Parte Young* held that a suit against a state official acting pursuant to an allegedly unconstitutional statute does not contravene that state's sovereign immunity under the Eleventh Amendment. 209 U.S. 123, 28 S.Ct.

441, 52 L.Ed. 714 (1908). Justice Peckham wrote: "The act to be enforced is alleged to be unconstitutional; and, if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional." *Id.* at 159, 28 S.Ct. 441.

In announcing this rule, the Court created an oft-recognized legal fiction that injunctive relief against state officials acting in their official capacity does not run against the State. *See Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 269–70, 281 (1997); Charles Alan Wright, *The Federal Courts* 311 (1994).

agencies, Navajo Supreme Court Justices, and tribal officials challenging their authority to regulate APS's employment practices. The defendants argued that they enjoyed sovereign immunity from suit. We held that the Nation and its executive agencies were immune from suit, but reaffirming our decision in *Blackfeet Tribe,* we held that sovereign immunity did not bar prospective relief against the individual tribal officials acting beyond the scope of their authority in violation of federal law. *See Aspaas,* 77 F.3d at 1133–34.

Dawavendewa's argument strikes us as an attempted end run around tribal sovereign immunity. Neither *Blackfeet Tribe* nor *Aspaas* insinuated that a plaintiff may circumvent the barrier of sovereign immunity by merely substituting tribal officials in lieu of the Indian Tribe. Rather, the doctrine announced in *Blackfeet Tribe* and reaffirmed in *Aspaas* permitted suits against officials allegedly acting in contravention of federal law.

That doctrine is inapplicable to Dawavendewa's suit. Unlike the complaints in *Blackfeet Tribe* or *Aspaas,* Dawavendewa's complaint never mentions tribal officials. Neither does it allege that tribal officials acted in contravention of constitutional or federal statutory law, nor has it named any tribal officials as parties to this litigation. Indeed, when pressed at oral argument, Dawavendewa could not even specify which tribal officials he would join, if permitted to do so.

In *Shermoen,* we addressed a similar ploy hatched by a plaintiff attempting to circumvent tribal sovereign immunity. 982 F.2d at 1319. In that case, the plaintiffs sued the United States, challenging the constitutionality of the Hoopa–Yurok Settlement Act. *Id.* at 1314. The district court granted the United States' motion to dismiss for failure of the plaintiffs to join the Hoopa Valley and Yurok Tribes as indispensable parties. Then "in an attempt

to circumvent the Hoopa Valley Tribe's sovereign immunity," relying on *Blackfeet Tribe,* plaintiffs sought to file a second amended complaint, naming individual members of the Hoopa Valley Tribe's governing council as defendants. *Id.* at 1317.

In rejecting plaintiff's attempt to prolong its suit, we reiterated the general rule: "a suit is against the sovereign if judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Id.* at 1320 (citations and internal quotations omitted). Indeed, as taught by the Supreme Court, if the relief sought will operate against the sovereign, the suit is barred. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101–02, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

■ As in *Aspaas* and *Blackfeet Tribe,* we have permitted suits against officials when it is alleged that those officials acted beyond their authority in contravention of constitutional or federal statutory law. Nevertheless, as recognized in *Shermoen,* a suit may be barred, even if the officer being sued has acted unconstitutionally or beyond his statutory powers, when the requested relief will require affirmative actions by the sovereign or disposition of unquestionably sovereign property.

Here, Dawavendewa sued only SRP for discriminating against him on the basis of his national origin. Dawavendewa alleges that SRP utilizes a Navajo hiring preference policy pursuant to a lease agreement with the Nation. His complaint specifies no action by tribal officials performed in contravention of constitutional or federal statutory law. Perhaps that fact is self-evident, demonstrated by Dawavendewa's failure to name any tribal official as a party to the original action.

Only when faced with the possible dismissal of his suit did Dawavendewa seek to join tribal officials. Unlike the ruling of the Navajo Supreme Court condemning APS's antinepotism policy in *Aspaas,* here no Nation official has heretofore acted to enforce the objectionable lease provision.

Undoubtedly many actions of a sovereign are performed by individuals. Yet even if Dawavendewa alleged some wrongdoing on the part of Nation officials, his real claim is against the Nation itself. At bottom, the lease at issue is between SRP and the Nation, and the relief Dawavendewa seeks would operate against the Nation as signatory to the lease. As such, we reject Dawavendewa's attempt to circumvent the Nation's sovereign immunity by joining tribal officials in its stead.

Finally, Dawavendewa recasts his complaint to allege that the Nation exceeded its sovereign jurisdiction in executing the lease and enacting the NPEA because those actions are attempts by the Nation to legislate the conduct of non-Indians within the reservation. *See Strate v. A–1 Contractors,* 520 U.S. 438 (1997); *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). In pressing this argument, he correctly notes that "tribal jurisdiction over the conduct of nonmembers exists only in very limited circumstances" and that "the inherent sovereign powers of an Indian Tribe do not extend to the activities of non-members of the Tribe."

From this solid precipice, however, Dawavendewa plummets to the assertion that the Nation cannot assert tribal sovereign immunity against Dawavendewa's claims. We disagree. Indeed, with this conclusion, Dawavendewa appears to confuse the fundamental principles of tribal sovereign authority and tribal sovereign immunity. The cases Dawavendewa cites address only the extent to which a tribe may exercise jurisdiction over those who are nonmembers, *i.e.,* tribal sovereign authority. Those cases do not address the concept at issue here—our authority and the extent of our jurisdiction over Indian Tribes, *i.e.,* tribal sovereign immunity.

In the case at hand, the only issue before us is whether the Nation enjoys sovereign immunity from suit. We hold that it does, and accordingly, it cannot be joined nor can tribal officials be joined in its stead.

## III Indispensable Party

The Nation is a necessary party that cannot be joined due to its tribal sovereign immunity. Accordingly, we consider whether the Nation is indispensable such that Dawavendewa's action must be dismissed. *See* Fed.R.Civ.P. 19(b).[11] A party is indispensable if in "equity and good conscience," the court should not allow the action to proceed in its absence. *Id.; Kescoli,* 101 F.3d at 1310. To make this determination, we must balance four factors: (1) the prejudice to any party or

**11.** Federal Rule of Civil Procedure 19(b) reads:

**Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. *See Kescoli,* 101 F.3d at 1310. If no alternative forum exists, we should be "extra cautious" before dismissing the suit. *Makah,* 910 F.2d at 560.

If the necessary party enjoys sovereign immunity from suit, some courts have noted that there may be very little need for balancing Rule 19(b) factors because immunity itself may be viewed as "one of those interests 'compelling by themselves,' " which requires dismissing the suit. *Wichita & Affiliated Tribes v. Hodel,* 788 F.2d 765, 777 (D.C.Cir.1986) (quoting 3A James W. Moore et al., *Moore's Federal Practice* ¶ 19.15 (1984)); *see also Enterprise Mgmt. Consultants, Inc. v. United States,* 883 F.2d 890, 894 (10th Cir.1989). Cognizant of these out-of-circuit decisions, the Ninth Circuit has, nonetheless, consistently applied the four part balancing test to determine whether Indian tribes are indispensable parties. *See Confederated Tribes,* 928 F.2d at 1499.

**A. Prejudice**—The prejudice to the Nation stems from the same impairment of legal interests that makes the Nation a necessary party under Rule 19(a)(2)(i). *See Clinton,* 180 F.3d at 1090 (determining prejudice test under Rule 19(b) is essentially the same as the inquiry under Rule 19(a) (citing *Confederated Tribes,* 928 F.2d at 1499)). A decision rendered in this case prejudices the Nation's economic interests in the lease with SRP, namely its ability to provide employment and income for the reservation. A decision so rendered would also prejudice the Nation's sovereign interests in negotiating contractual obligations and governing the reservation.

Furthermore, the absence of the Nation prejudices SRP by preventing the resolution of its lease obligations. As explained by the district court, "SRP could be faced with an irreconcilable conflict between SRP's obligations to [Dawavendewa] and others similarly situated and SRP's obligations to the Navajo Nation under the lease." Dawavendewa argues that SRP and the Navajo Nation face no prejudice because their "duties and obligation have already been determined" in *Dawavendewa I.* Yet it is precisely because this case has not been determined on the merits and all legal defenses have not been presented, that SRP and the Nation face potential prejudice. This factor weighs in favor of dismissal.

**B. Shaping Relief**—No relief mitigates the prejudice. Any decision mollifying Dawavendewa would prejudice the Nation in its contract with SRP and its governance of the tribe. This factor weighs in favor of dismissal.

**C. Adequate Relief**—No partial relief is adequate. Any type of injunctive relief necessarily results in the above-described prejudice to SRP and the Nation. An award of damages would not resolve SRP's potential liability to other plaintiffs or address the Nation's contention that Title VII does not apply on the reservation.

**D. Alternative Forum**—Finally, we note that in *Lomayaktewa, Confederated Tribe, Shermoen, Pit River Home, Quileute Indian Tribe, Kescoli,* and *Clinton,* we determined that the plaintiff would be without an alternative forum to air his grievances. Nevertheless, in each case, we determined that the absent Indian Tribe was indispensable and dismissed the case.

■■■ Dawavendewa, on the other hand, may have a viable alternative forum in which to seek redress. Sovereign immunity does not apply in a suit brought by the United States. Moreover, recently, in *EEOC v. Karuk Tribe Hous. Auth.,* 260 F.3d 1071, 1075 (9th Cir.2001), we held

that because no principle of law "differentiates a federal agency such as the EEOC from 'the United States itself,'" tribal sovereign immunity does not apply in suits brought by the EEOC.

At the eleventh hour, the EEOC moved to intervene in an effort to salvage Dawavendewa's case and possibly combine it with other pending litigation. Although we denied that motion, we note that nothing precludes Dawavendewa from refiling his suit in conjunction with the EEOC.[12]

Recognizing the resources and aggravation consumed in relitigating, however, we determine that factor four remains in equipoise. Balancing these four factors, we find the Nation is indispensable, and in "equity and good conscience," this action should not proceed in its absence.

Dawavendewa is not entitled to attorney's fees.

## CONCLUSION

We affirm the district court's decision to dismiss Dawavendewa's complaint for failure to join the Nation as an indispensable party.

AFFIRMED.

---

12. Moreover, Dawavendewa may follow the procedural posture suggested by *Aspaas.* 77 F.3d at 1133–34. He may bring suit in tribal court and after an adverse decision, Dawavendewa could allege sufficient actions by tribal officials, *i.e.,* Navajo Supreme Court Justices, to sustain his action. *See also National Farmers Union Ins. v. Crow Tribe of Indians,* 471 U.S. 845, 856–57, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985).